| | | |
|---|---|---|
| KAREN MCQUADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| XEROX CORPORATION and | ) | |
| TYRONE PARKER, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion to dismiss filed by defendant Tyrone Parker ("Parker") (DE # 20) and the motion for judgment on the pleadings filed by defendant Xerox Corporation ("Xerox") (DE # 22. These motions have been fully briefed, and the issues raised now are ripe for adjudication. For the reasons that follow, defendants' motions will be granted.[1]

## STATEMENT OF THE CASE

Plaintiff, a Xerox employee for twenty-eight (28) years before separating from the company in 2008, initiated this action on April 16, 2010. Plaintiff seeks to hold defendants liable for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and North Carolina common law. She seeks recovery of back pay, reinstatement in her job, compensatory and punitive damages, and costs and attorney's fees.

---

[1] Defendants' motion for a protective order (DE # 36) and motion to stay the dispositive motion deadline (DE # 39) are addressed in separate orders. For good cause shown, and where Xerox's counterclaim will remain pending, those motions will be allowed.

Xerox answered on May 20, 2010. In its answer, Xerox denies liability, pleads a number of affirmative defenses, and asserts a counterclaim for breach of contract. Xerox seeks damages and costs and attorney's fees with respect to its counterclaim. Plaintiff answered the counterclaim on June 8, 2010, denying liability and asserting affirmative defenses. Parker did not file an answer or counterclaim.

On July 19, 2010, Parker moved to dismiss the complaint. Shortly thereafter, on July 28, 2010, Xerox filed its motion seeking judgment on the pleadings. Plaintiff responded in opposition to the motion to dismiss on August 3, 2010, and to the motion for judgment on the pleadings on August 11, 2010. Parker replied as to his motion on August 19, 2010, and Xerox followed suit on August 30, 2010.

## STATEMENT OF THE FACTS

The facts alleged in the complaint, viewed in the light most favorable to plaintiff, are as follows.[2] Plaintiff began her employment at Xerox in November 1980, remaining with the company for twenty-eight (28) years. In December 2006, she was promoted from the position of Manager of Technical Services and Support to the position of Regional Manager by Parker, a Senior Vice President with Xerox. Plaintiff relocated to Xerox's Raleigh facility for this position. She received consistently favorable evaluations and performance reviews, and fully, adequately, and completely performed her employment duties.

At a lunch meeting in June 2008, Parker informed plaintiff that Xerox was planning a restructuring and reduction in force. He asked her to accept a reduction in force package, with a

---

[2] At the outset, the court notes certain relevant allegations about the parties in this case. Plaintiff is a white female over the age of forty (40). Parker is an African-American male. Xerox is a multi-billion dollar corporation with approximately 130,000 employees worldwide. It is incorporated in New York with headquarters in Connecticut.

2

promise that he would later rehire her. Parker assured plaintiff that she was not being terminated for performance reasons. During the meeting, he wrote on a napkin the new organizational chart explaining the restructuring. He circled two jobs that would be available to plaintiff: General Manager and Senior Operations Manager. A third position, Manager of Technical Support and Services, was also discussed as a "worst case" rehire scenario.

During the meeting over lunch, Parker and plaintiff agreed as to all pertinent terms of her rehire. Plaintiff accepted Parker's offer to accept the reduction in force package in exchange for the promise to be rehired. They agreed that her salary and benefits on rehire would be comparable to her current salary. According to plaintiff, she never would have accepted the reduction in force package had she not been expressly promised to be rehired by Parker. She also states that Parker had authority to rehire her, and that Xerox knew or should have known about his offer.

Later in June 2008, plaintiff met with Parker and a human resources officer at Xerox's Raleigh facility and executed the reduction in force documents.[3] Parker remained in contact with plaintiff through Fall 2009 to follow-up on his promise to rehire her. Plaintiff was not actively looking for employment during this period, relying on Parker's representation that she would be rehired. In Fall 2009, plaintiff applied for the position of Manager of Technical Support and Services – one of the three positions she and Parker had spoken about – and was rejected. Although plaintiff was not rehired, an African-American female Regional Manager was. This other individual was the only other Regional Manager impacted by the June 2008 reduction in force.

---

[3] Plaintiff states that she was not provided the statutorily mandated amount of time under federal law to review the reduction in force package, which included a waiver of claims. She also states that she was informed by Paker and his executive assistant in September 2008 that the executed paperwork had been lost and that plaintiff would have to execute another signature page and return it immediately. Plaintiff was informed that, if she did not resubmit the signature page, she would forfeit her benefits.

3

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") relating to these events on December 17, 2009. On January 22, 2010, plaintiff received a notice from the EEOC advising her that the EEOC was closing its file on the charges and that she retained the right to timely sue in federal court ("right to sue letter"). As already noted, plaintiff filed this lawsiut on April 16, 2010.

## DISCUSSION

A.     Standard of Review

Defendants' motion to dismiss under Rule 12(b)(6) and motion for judgment on the pleadings under Rule 12(c) are governed by the same standard. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of either motion is to challenge the sufficiency of the pleadings, rather than to resolve contested facts or the merits of a claim. See Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim survives such a challenge if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor will the court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

4

B.  Analysis

As noted, plaintiff's claims arise under Title VII, ADEA, and state common law. Her common law claims include breach of contract, fraud and reckless misrepresentation, fraudulent inducement, and breach of the duty of good faith and fair dealing. Xerox argues that each of these claims is barred by a release of claims executed by plaintiff as part of the reduction in force documents. Parker argues that Title VII and ADEA do not permit individual liability. Both defendants also challenge the sufficiency of plaintiff's allegations with respect to each of her federal and state law claims.

1.  Release of Claims

The court begins with Xerox's argument that plaintiff's claims are barred by the release of claims signed by plaintiff in connection with the reduction in force package. Because the burden of establishing an affirmative defense rests on the defendant asserting it, a motion under Rule 12(b)(6) or Rule 12(c) is generally not the appropriate vehicle to mount such a challenge. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). It is only in "the relatively rare circumstances where . . . all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*'" that the court may consider an affirmative defense through a motion under 12(b)(6). Id. (quoting Richmond, Fredricksburg & Potomac R.R. v. Frost, 4 F.3d 244, 250 (4th Cir. 1993)) (alterations and emphasis in original). Due to the identical standards employed, the court will reach an affirmative defense through a motion under Rule 12(c) in similarly rare circumstances, with the caveat that the court may look to the uncontested pleadings as a whole – and not simply plaintiff's complaint – in determining whether all facts necessary to deciding the issue clearly

5

appear. Cf. In re Stucco Litigation, 364 F. Supp. 2d 539, 541 (E.D.N.C. 2005) (noting that a court looks to all pleadings in ruling on a Rule 12(c) motion).

The pleadings frame the issue as follows. In her complaint, plaintiff alleges that she executed reduction of force documents in June 2008 and that she executed a second signature page in September 2008 after the original had been misplaced. She alleges that she was told by Parker's executive assistant that failure to execute the second signature page would result in forfeiture of her benefits. Plaintiff also indicates that defendants' fraudulent conduct induced her to sign the release when she otherwise would not have.

Xerox's counterclaim and answer also references the release, and the release itself is presented to the court as Exhibit A to that filing.[4] According to the plain terms of the release, plaintiff agrees to release Xerox and its employees and other affiliates from any and all claims based on conduct occurring prior to its execution. In exchange, Xerox agrees to supply consideration in the form of salary continuance. Beyond this broad waiver of "any and all claims," the agreement specifically mentions ADEA and Title VII as released. Also specifically mentioned are state law claims based on any promises made regarding future employment.

A general release discharges all claim against the released party. Hardee's Food Sys., Inc. v. Oreel, 32 F. Supp. 2d 342, 345 (E.D.N.C. 1998). The validity of a such a release is governed by general principles of contract law. See Lewis v. Extended Stay Am., Inc., 454 F. Supp. 2d 453, 457 (M.D.N.C. 2006); see also Horton v. Norfolk S. Corp., 102 F. Supp. 2d 330, 339 (M.D.N.C.) ("[A]

---

[4] In addition to the pleadings themselves, the court may look to documents attached thereto, documents attached to a Rule 12 motion that are integral to the complaint and authentic, and matters of public record of which judicial notice may be taken. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Plaintiff appears to admit to the veracity of the release in her answer to Xerox's counterclaim, and relies upon its language in her opposition to Xerox's motion. She also urges the court to consider the release without converting Xerox's motion to one pursuant to Rule 56. Accordingly, the court looks to the release at Exhibit A in adjudicating the instant Rule 12(c) motion.

6

release is contractual in nature and is governed by the same rules of execution, validity, and interpretation as those governing contracts."), aff'd, 199 F.3d 1327, 1999 WL 957720 (4th Cir. Oct. 19, 1999) (unpublished table decision).[5] A release is valid only if it was "voluntary, deliberate and informed, and . . . supported by consideration." Lewis, 454 F. Supp. 2d at 457. As with any other contract, a release may be invalid due to mutual mistake, fraud, misrepresentation, or duress. See Va. Impression Prods. Co. v. SCM Corp., 448 F.2d 262, 265 (4th Cir. 1971); George v. McClure, 266 F. Supp. 2d 413, 418-19 (M.D.N.C. 2001); Davis v. Hargett, 244 N.C. 157, 161, 92 S.E.2d 782, 785 (1956).

The Older Worker's Benefits Protection Act ("OWBPA") provides additional requirements for a valid release or waiver of an ADEA claim. See Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-48 (1998). Under the OWBPA, a waiver of an ADEA claim is valid only if its "knowing and voluntary," meaning: (1) the wavier was written in manner calculated to be understood by plaintiff or the average individual eligible to participate; (2) it specifically refers to rights or claims under ADEA; (3) it does not apply to claims arising after the date of its execution; (4) it was executed in exchange for consideration in addition to anything of value to which plaintiff is entitled; (5) plaintiff was advised in writing to consult with an attorney prior to executing the agreement; (6) plaintiff was given at least forty-five (45) days within which to consider the waiver; and (7) the waiver provides plaintiff a seven-day window for revocation. 29 U.S.C. § 626(f)(1).

Plaintiff relies on both the common law rules governing the validity of a release and the additional protections of the OWBPA in challenging the release. Neither of these arguments has

---

[5] With respect to "releases of particular federal rights secured by specific provisions of federal law," the Fourth Circuit has elected in the past "not to adopt the federal common law rule used by some circuits for determining the validity of such a release," but instead has looked to "relevant state law principles." See Kendall v. City of Chesapeake, Va., 174 F.3d 437, 441 n.1 (4th Cir. 1999).

7

merit. Accepting as true, as the court must, her allegations of the fraud and duress used to secure the release, plaintiff would nevertheless be required to return any consideration before she could avoid the terms of the release. See Davis, 244 N.C. at 162, 92 S.E.2d at 785; see also Arbia v. Owens-Illinois, Inc., 2004 WL 1345091, at *2-3 (M.D.N.C. June 4, 2004); accord Rachesky v. Finklea, 329 F.2d 606, 609 (4th Cir. 1964) (applying South Carolina law). The same "tender-back" requirement holds true for a release that allegedly violates the OWBPA. See Adams v. Moore Bus. Forms, Inc., 224 F.3d 324, 327 n.* (4th Cir. 2000) (citing Oubre, 522 U.S. at 432-33 (Breyer, J., concurring); Blistein v. St. John's Coll., 74 F.3d 1459 (4th Cir. 1986)). As Xerox alleges in its counterclaim and plaintiff admits in her answer, plaintiff has not returned the consideration given in exchange for the release. Accordingly, the release is valid against her attacks premised on state law and the OWBPA.[6]

Although the validity of the release is upheld, it remains for the court to determine whether its plain language bars the claims asserted her. As mentioned, plaintiff agreed to release "any and all claims, even if I don't know about the claim at this time, based on anything that has occurred prior to the date I sign this Release." Counterclaim Ex. A ¶ 2. In a separate paragraph, plaintiff

---

[6] In any event, the language of the release fully complies with each of the requirements of § 626(f)(1). The court notes that the release is written in easily understood language and specifically references ADEA. It does not purport to waiver claims arising after the execution of the release. It notes that plaintiff received a salary continuance (i.e., Xerox continued to pay plaintiff's salary for nine months after her separation from the company) as consideration, and plaintiff has admitted as much in her answer to Xerox's counterclaim. Finally, the release contains express language, written in bolded capital letters, advising plaintiff to consult with an attorney, to take up to forty-five (45) day to consider the release before signing, and to inform Xerox within seven days of any intent to revoke the release.

Although plaintiff contends that she was not advised by Parker or the human resources officer to consult an attorney or to take the required forty-five (45) days before signing the release, such advice is clearly written in bold on the face of the release. It is a fundamental principle of contract law that "parties to a contract have an affirmative duty to read and understand a written contract before signing it." Park v. Merrill Lynch, 159 N.C. App. 120, 126, 582 S.E.2d 375, 380 (2003); accord Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 571 (4th Cir. 1998). It matters not a whit whether plaintiff was verbally informed of her rights under the OWBPA. She was informed *in writing* of these rights and declined to exercise them. The OWBPA does not invalidate the release with respect to plaintiff's ADEA claims in these circumstances.

8

explicitly releases Xerox from claims arising out of "any employment contract between Xerox and me, any promises made by Xerox regarding future employment, or based on the termination of my employment." Id. ¶ 3.

Plaintiff's state law claims unmistakably involve Parker's promise to rehire her at Xerox, actions he is alleged to have taken on Xerox's behalf before she signed the release. Accordingly, these claims are barred by the terms of the release. Plaintiff's Title VII and ADEA claims are more difficult to interpret, and defendant and plaintiff appear to quibble over whether her Title VII and ADEA claims arise from her separation with the company or from its refusal to rehire her. Regardless of which of these actions was alleged to be discriminatory, the language in the release pertains both to currently existing employment contracts and any promise regarding future employment. Either of these claims is therefore covered by the release. Accordingly, Xerox's motion for judgment on the pleadings is granted.

  2.  Plaintiff's Title VII and ADEA Claims

Although the language in the release (which applies not only to Xerox but also to each of its employees, officers, and agents) would appear to bar plaintiff's claims against Parker, that argument has not been raised before the court. Instead, Parker challenges the legal or factual sufficiency of each of plaintiff's claims. The court therefore addresses these arguments in turn, starting with Parker's argument that he may not be held individually liable under the federal employment discrimination laws cited by plaintiff.

ADEA and Title VII each make it unlawful for an "employer" to engage in certain discriminatory conduct. See 29 U.S.C. § 623; 42 U.S.C. § 2000e-2. "Employer" is defined in ADEA in pertinent part as "a person engaged in an industry affecting commerce who has twenty or

9

more employees . . . ." 29 U.S.C. § 630(b). A similar definition is used by Title VII, but with a lower threshold of fifteen employees. See 42 U.S.C. § 2000e(b). Based on these definitions, the Fourth Circuit has explicitly rejected individual liability under either statute. See Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998) (Title VII); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 (4th Cir. 1994) (ADEA).

Plaintiff concedes that Parker does not meet the statutory definition of an employer and that Lissau and Birkbeck foreclose her federal claims against him. Nevertheless, she inexplicably asserts that Parker's argument is "unpersuasive and premature," and asks the court to deny the motion to dismiss. The only justification given by plaintiff is that she did not mean to name Parker as a defendant with respect to these claims. But plaintiff has not moved to amend her complaint, which is currently worded in such a way as to allege Parker's liability under Title VII and ADEA. And even if plaintiff asked for and were given leave to amend her complaint, an individual supervisor simply is not liable under these statutes. Parker's motion to dismiss these claims is granted.

3. Plaintiff's Contract Claims

Plaintiff asserts two causes of action on a contract theory. First, she asserts that Parker is liable for breach of contract because he promised to rehire her in exchange for accepting the reduction in force package, but did not do so. Second, she asserts that Parker breached the duty of good faith and fair dealing inherent in every contract in North Carolina by acting in bad faith in making and later refusing to abide by the contract.

To state a claim for breach of contract under North Carolina law, "'the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach.'" Capparelli v. AmeriFirst

10

Home Improvement Fin. Co., 535 F. Supp. 2d 554, 563 (E.D.N.C. 2008) (quoting Claggett v. Wake Forest Univ., 126 N.C. app. 602, 608, 486 S.E.2d 443, 446 (1997)). Here, the court assumes without deciding that plaintiff has properly alleged each of the elements of this cause of action. However, even operating under this assumption, it is undisputed that the contract she alleges was between herself and Xerox, not herself and Parker. Her complaint states that Parker was operating as Xerox's authorized agent in negotiating any contract, see Compl. ¶ 30, and she confirms this in her response to the motion to dismiss, see Mem. Opp. Mot. to Dismiss at 15.

Although plaintiff contends that Parker may be held liable under these facts, it is well-settled that "[a]n agent does not become liable because of his principal's breach of a contract negotiated by the agent for the principal." Forbes Homes, Inc. v. Trimpi, 318 N.C. 473, 479-80, 349 S.E.2d 852, 856 (1986). Accordingly, "[w]hen a corporate officer acts as an agent for the corporation and enters into a contract with a third party, providing notice that he is acting as the agent for the corporation, the corporate officer is not personally liable for corporation obligations arising from the contract." DeWitt v. Hutchins, 309 F. Supp. 2d 743, 752 (M.D.N.C. 2004) (citing Nutek Custom Hosiery, Inc v. Roebuck, 161 N.C. App. 166, 168, 587 S.E.2d 502, 504 (2003); Baker v. Rushing, 104 N.C. App. 240, 248, 409 S.E.2d 108, 112-13 (1991)). Thus, because Parker was admittedly acting as Xerox's agent, a breach of contract action will not lie against him.

Additionally, although plaintiff captions her claim "breach of contract / promissory estoppel," North Carolina does not recognize the affirmative use of promissory estoppel to substitute one of the essential elements of a breach of contract claim. See Dealers Supply Co. v. Cheil Indus., 384 F. Supp. 2d 579, 586-87 (M.D.N.C. 2004); Pharmacy Servs., Inc. v. Beverly-Hanks & Assocs., Inc., 124 F. Supp. 2d 343, 347 (W.D.N.C. 2000); Jacobs v. Cent. Transp., Inc., 891 F. Supp 1088,

11

1118 (E.D.N.C. 1995), rev'd in part on other grounds, 83 F.3d 415, 1996 WL 223688 (4th Cir. May 3, 1996) (unpublished table decision). By invoking promissory estoppel in her complaint, it appears that plaintiff is using the doctrine affirmatively. It may not be used in this manner. Accordingly, plaintiff's breach of contract claim against Parker, a known and authorized agent of Xerox, fails regardless of any promissory estoppel analysis.

Plaintiff's claim that Parker breached the implied covenant of good faith and fair dealing is similarly unavailing. This implied covenant is read into every contract by the North Carolina courts. See Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985). But breach of this duty is actionable only "*where a party to a contract* performs its contractual obligations in bad faith, and such breach of the implied duty serves as a cognizable basis for a breach of contract." Suntrust Mortg., Inc. v. Busby, 651 F. Supp. 2d 472, 487 (W.D.N.C. 2009) (emphasis added). In other words, such a claim is "part and parcel" of plaintiff's breach of contract claim and therefore rises and falls with it. See, e.g., Lord of Shalford v. Shelley's Jewelry, Inc., 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000), aff'd, 18 F. App'x 147 (4th Cir. 2001) (per curiam) (unpublished). Because Parker was not a party to any contract alleged by plaintiff, this claim must also be dismissed.

    4.    Plaintiff's Fraud Claims

Finally, the court turns to plaintiff's two fraud claims – fraud (or "actual fraud" or "fraud by misrepresentation") and fraudulent inducement. Plaintiff alleges that Parker promised to rehire her in a new position with Xerox if she would accept the reduction in force package. She contends that Parker knew that she would not accept the reduction in force package absent such a promise, because as her supervisor he knew that she was not ready to retire, had just moved to North Carolina, and would not voluntarily separate from Xerox if she was not guaranteed an ability to

12

return to the company. Plaintiff contends that she reasonably relied on this promise and did not search for other employment or pursue other opportunities.

Plaintiff's fraud claims share the same five essential elements: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992); see also Media Network, Inc. v. Long Haymes Carr, Inc., 197 N.C. App. 433, 453, 678 S.E.2d 671, 684 (2009) (applying same factors in fraudulent inducement action). Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiff to plead the "circumstances" surrounding fraud with particularity. See, e.g., Strum v. Exxon Co., USA, 15 F.3d 327, 331 (4th Cir. 1994); Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp. 2d 793, 797 (E.D.N.C. 2005). The circumstances of fraud that must be pled with particularity include "the time, place, and contents of the false representations, as well as the identity of the person making the representations and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

Parker argues that plaintiff's allegations do not state an actionable claim for fraud because Parker's representations that he would rehire her were a mere promise of future intent. "As a general rule, a mere promissory representation will not be sufficient to support an action for fraud . . . [unless] it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 255, 266 S.E.2d 610, 616 (1980), overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 374 S.E.2d 385 (1988). Parker argues that plaintiff has not put forward any allegations that Parker entered into the contract with the intent to deceive. The court agrees.

13

The facts in plaintiff's complaint simply state that Parker agreed to rehire plaintiff in exchange for her accepting a reduction in force package, but that he never carried through on this promise. She also alleges that such representations were "material" and made "falsely," with the "intent of misleading" her. But even though a plaintiff need not plead a defendant's state of mind with particularity to state a fraud claim, see Fed. R. Civ. P. 9(b), such bare-bones recitations are not sufficient to allege an intent to deceive on the part of Parker. See Nemet Chevrolet, 591 F.3d at 255 (noting that court does not consider "elements of a cause of action" or "bare assertions devoid of further factual enhancement").

If anything, plaintiff's allegations merely assert that a breach of an agreement to rehire her. This is insufficient. North Carolina law jealously guards the separate identity of actions for tort and those for contract, and a plaintiff must assert facts establishing that the fraud claim exists separate and apart from a breach of contract. Strum, 15 F.3d at 330-31. In fact, fraud arises out of similar circumstances a breach of contract action "only in 'carefully circumscribed' circumstances." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998) (quoting Strum, 15 F.3d at 330-31). As such, the "mere failure to carry out a promise in contract . . . does not support a tort action for fraud." Strum, 15 F.3d at 331. A failure to carry out the promise to rehire plaintiff is exactly what is alleged to have occurred here. Parker's motion to dismiss is granted.

C. Defendants' Request for Attorney's Fees

Defendants have each requested an award of all costs and fees incurred in preparing their respective motions. Plaintiff opposes these requests. However, the briefings thus far do allow the court to determine whether and to what extent attorney's fees are warranted. If defendants continue to seek costs and attorney's fees, they are directed to file an application for costs and a motion for

14

attorney's fees within fourteen (14) days of entry of judgment in this case.  See Fed. R. Civ. P. 54(d); Local Civil Rule 54.1.  Defendants must specify the statute, rule, or other grounds entitling them to an award of fees, and their request must be supported by affidavits.  Morever, any request for fees must satisfy a multi-factor test regarding reasonableness.  See Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978).  Plaintiff shall have fourteen days from service of defendants' motions within which to respond in opposition to the requested award of costs and attorneys fees.

The court notes that Xerox has not moved for judgment on its counterclaim for breach of contract, nor has it moved to voluntarily dismiss this claim.  Accordingly, this claim remains pending.  Until such time as Xerox's counterclaim is adjudicated, this case will not proceed to judgment.  See Fed. R. Civ. P. 54(b).  And as already noted, until the court enters judgment, any application for costs will be premature.  See, e.g. Wynne v. P.C. Greenville Ltd. P'ship, 190 F.R.D. 399, 401 (E.D.N.C. 1998).  A motion for an award of attorneys fees is likewise best left until the court has entered judgment under Rule 54.

## CONCLUSION

For the reasons given herein, defendant Parker's motion to dismiss (DE # 20) and defendant Xerox's motion for judgment on the pleadings (DE # 22) are granted.  Plaintiff's action is dismissed. Xerox's counterclaim remains pending.

SO ORDERED, this the 31st day of January, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge